UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JACK E. TRUITT, ET AL | CIVIL ACTION |
| VERSUS | NO. 08-3782 |
| DIRECTV, INC. ET AL | SECTION: "C"(1) |

**ORDER AND REASONS**[1]

This matter comes before the Court on the defendant DirecTV, Inc.'s Motion to Dismiss or Stay Proceedings Pending Arbitration and to Compel Arbitration, or in the alternative, to Dismiss the First Amended, Restated, and Superseding Class Action Complaint under Federal Rule of Civil Procedure 12(b)(6). After considering the parties' memoranda, supporting exhibits, and the applicable law, the Court hereby GRANTS the defendant's motion for the following reasons.

I. Background

The plaintiff's complaint arises out of a voluntary cancellation of satellite-based television services from DirecTV, Inc. ("DirecTV"). (Rec. Doc. 14). According to Valerie W. McCarthy ("McCarthy"), Senior Manager of Customer Communications for DirecTV, Jack E.

---

[1] Daniel Lai, a third year student at Tulane Law School, assisted in research and preparation of this decision.

1

Truitt ("Truitt") cancelled his DirecTV service in January 2007.  (Rec. Doc. 9, McCarthy Decl. ¶6).  DirecTV then charged an "Early Cancellation Fee" in the amount of $162.00 on January 27, 2007.  (Rec. Doc. 9, McCarthy Decl. ¶6; 14, ¶10).  The defendant contends that the cancellation fee is provided for by Section 5(b) of the Customer Agreement.  (Rec. Doc. 9, McCarthy Decl. ¶¶6-7).  The plaintiff filed a First Amended, Restated, and Superceding Class Action Complaint on September 9, 2008 alleging that DirecTV breached its contract by charging an early cancellation fee and thereby converted the plaintiff's funds.  (Rec. Doc. 14).  The plaintiff filed this complaint as a class action suit, on behalf of himself and all others similarly situated.  *Id.*  After the defendant filed its first motion to dismiss, the plaintiff amended his complaint to deny that he had "entered into a Customer Agreement with DirecTV".  (Rec. Docs 1, ¶6; 19).

The defendant in turn filed this motion, contending that this dispute is subject to arbitration under the alleged 2006 Customer Agreement between Truitt and DirecTV.  (Rec. Doc. 19).  The plaintiff contends that he never agreed to submit any dispute with DirecTV to arbitration.  (Rec. Doc. 32).  The plaintiff also contends that, in support of DirecTV's motion to compel arbitration, DirecTV relies on a clause in the "DirecTV Customer Agreement" that is adhesionary and unconscionable and therefore unenforceable.  *Id.*  Consequently, the issues are (i) whether Truitt is bound to the Customer Agreement, including its arbitration provision, with DirecTV and (ii) whether the arbitration provision as set forth in the Customer Agreement are adhesionary and unconscionable and therefore unenforceable.

II. Law and Analysis

2

A. The Enforceability of the Contract and the FAA

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., provides in pertinent part:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract

9 U.S.C. § 2.

Due to the liberal policy in favor of arbitration, the party objecting to arbitration bears the burden to show that the Agreement is invalid. *See Walton v. Rose Mobile Homes, LLC*. 298 F.3d 470, 473 (5th Cir.2002). To decide whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally should apply ordinary state law principles that govern the formation of contracts. *See, e.g., First Options of Chicago. Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Volt Information Sciences. Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-476 (1989). Generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening the FAA. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 686-687 (1996).

Under Louisiana law, valid contract formation must have the following four elements: (1) the parties had the capacity to contract; (2) the parties freely gave their mutual consent to the contract; (3) the parties had cause or reason for obligated themselves; and (4) the contract has a lawful purpose. La. Civ. Code, arts.1918, 1927, 1966, 1971, 2029 cmt. b. (1991). *See also Crowe v. HomesPlus Manufactured Hous. Inc.*, 877 So.2d 156 (La.Ct.App.2004). A court may invalidate a contract under Louisiana law on grounds when a contract is unconscionable. *Sutton's Steel & Supply. Inc. v. Bellsouth Mobility. Inc.*, 776 So.2d 589, 596-598 (La.App. 3th

Cir.2000), writ denied, 787 So.2d 316 (La.2001).  A contract may be found to be unconscionable under procedural or substantial grounds.  *Ndanyi v. Rent-A-Center, Inc.*, No. Civ.A. 04-1769, 2004 WL 3254516, at *3-4 (E.D. La. Dec. 11, 2004).

A contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party.  *Golz v. Children's Bureau of New Orleans, Inc.*, 326 So.2d 865, 869 (La.1976).  Where its provisions are in unusually small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms.  *Id.*  "The mere fact that a contract contains an arbitration provision does not render it adhesionary."  *Sutton's Steel & Supply, Inc.*, 776 So.2d at 596.  As a general rule, "a person who signs a written instrument is presumed to know its contents and cannot claim that he did not read or understand the document.  *Blount v. Smith Barney Shearson*, 695 So.2d 1001 (La.App. 4th Cir.1997); *Brown v. Simoneaux*, 593 So.2d 939 (La.App. 4th Cir.1992); *Tweedel v. Brasseaux*, 433 So.2d 133 (La.1983).

The Court agrees with the defendant that the plaintiff is bound to the Customer Agreement and that the arbitration provisions as set forth in the Customer Agreement are valid and enforceable under Louisiana law.  Clearly both Truitt, an attorney, and DirecTV have the capacities to contract.  The plaintiff Truitt states that he entered into agreements for the purchase and sale of satellite television equipment and services from DirecTV on June 6, 2004 and August 2, 2005 in the form of two "Work Orders" from Bruister and Associates, "an authorized DirecTV dealer".  (Rec. Doc. 32).  Pursuant to the Work Orders, Truitt received satellite equipment and installations from Bruister and Associates.  *Id.*  There is a "Satellite System Agreement" on the back side of the Work Order that required "a programming commitment and current payment

status with DirecTV. *Id.* Truitt argues that he only agreed to maintain "current payment status with DirecTV" and "to maintain the basic package of $31.99 per month for a minimum of the next 13 consecutive months". *Id.* Truitt states that he did not agree to any additional terms and provisions and concludes that he is bound to DirecTV only on the terms as set forth in the Work Order and the Satellite System Agreement. *Id.*

Under Louisiana law, evidence indicating that an item has been properly mailed creates a presumption that the addressee received the item. *Otterman v. Ganus*, 455 So. 2d 1385, 1387 (La. 1984). DirecTV began to provide Truitt satellite television services in 1998. (Rec. Doc. 9, McCarthy Decl. ¶5). All evidence points to (i) DirecTV having had Truitt's correct billing address and furthermore (ii) DirecTV having timely mailed its monthly bills to Truitt since Truitt has managed to stay current in his monthly bills up until his cancellation of services. DirecTV has sent copies of the Customer Agreement to Truitt along with its monthly bill (including its first monthly bill) five times since 1998. (Rec. Doc. 9, McCarthy Decl. ¶5-6; 19). Truitt denies that he received a copy of the Customer Agreement until after he cancelled his service on or about December 2006. (Rec. Doc. 32). Such denials by Truitt do not overcome the presumption that he received copies of the Customer Agreement.

According to McCarthy, copies of the Customer Agreement are mailed with the first billing statement and also when the Customer Agreement is updated. (Rec. Doc. 35, McCarthy Supp. Decl. ¶6). Truitt first received the Customer Agreement in 1998, which was a copy of the July 1997 Customer Agreement. (Rec. Doc. 9, McCarthy Decl. ¶6). This July 1997 Customer Agreement included an arbitration provision requiring any dispute which could not be resolved informally to be resolved formally in binding arbitration. (Rec. Doc. 9, Exh. A). Truitt

subsequently received updated versions incorporating amendments to the Customer Agreement made in November 1999, December 2001, October 2004 and May 2006.  (Rec. Doc. 9, McCarthy Decl. ¶6).  Citing La. C.C. art. 1927, the plaintiff argues that consent is "established through offer and acceptance," and "may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent."  (Rec. Doc. 26)  Since Truitt continued to receive DirecTV services and did not cancel until on or about December 2006, the Court finds that Truitt had already consented to the Customer Agreement (including its arbitration provisions) by silence or inaction, before the 2004 Work Order and Satellite System Agreement.  Therefore Truitt is bound to the Customer Agreement with DirecTV.  It should be noted, however, that this finding by the Court does not reach the issue of what liabilities Truitt may or may not have (i) under the Work Order and Satellite System Agreement or (ii) if he had chosen to reject the Customer Agreement in the first place.

This Court finds that the Customer Agreement, along with its arbitration provision, are not adhesionary or unconscionable.  DirecTV states that the Customer Agreements "further provide that it could be replaced by subsequent, updated Agreements and that Truitt would accept the terms of any subsequent Agreements in the same manner that he agreed to the terms of the initial Customer Agreement–by continuing to accept DirecTV services."  (Rec. Doc. 19)  As Truitt cancelled his service on or about December 2006, the May 2006 Customer Agreement (and not the April 2007 version), along with its arbitration provision, governs this dispute.[2]  The arbitration provision in the May 2006 Customer Agreement is contained in Section 9 "Resolving

---

[2]DirecTV states that Truitt cancelled his service on January 2007, approximately one month later than what Truitt claims.  (Rec. Doc. 19).

6

Disputes". (Rec. Doc. 9, Exh. E). It states that any claim which cannot be resolved informally as asserted by either party will be resolved only by binding arbitration, which is consistent with the arbitration provision of the July 1997 Customer Agreement. *Id.*

Although the Customer Agreement is in standard form, it is not a result of unequal bargaining power among the parties to the contract. Truitt had sufficient opportunity to refuse service and thereby also reject the terms of the contract. The first paragraph of the Customer Agreement alerts the potential customer in capitalized letters that continuing to receive DirecTV's service means that the customer accepts the terms and conditions of the Customer Agreement, including the provisions relating to arbitration. (Rec. Doc. 9, Exh. E). Thus, sufficient attention is given to the customer regarding the provisions that govern the resolution of disputes. The provisions in Section 9 "Resolving Disputes" are not in fine print. *Id.* Therefore the Court finds that the Customer Agreement is not procedurally unconscionable. *See Ndanyi*, 2004 WL 3254516, at *3 (stating that, unless the agreement's provisions are in fine print or lack clarity, "the plaintiff cannot overcome the presumptive duty to read").

With respect to the substance of the arbitration provision itself, it provides that all remedies otherwise available through state law are still available to the customer in the arbitration proceeding. (Rec. Doc. 9, Exh. E). Also, DirecTV is likewise bound by the agreement and is willing to pay arbitration fees equal to the applicable filing fees in the relevant state court where the customer would have otherwise filed a state court suit. *Id.* In *Ndanyi*, the court held that "there was nothing uneven about the rights created in the Arbitration Agreement" in support of its decision that the arbitration provisions were not substantially unconscionable. *Ndanyi*, 2004 WL 3254516, at *4. The Court does not see anything "uneven" about the rights as

created in the arbitration provision or any indication that would make the arbitration provision substantively unconscionable.  Therefore the Court finds that the Customer Agreement is not substantively unconscionable.

III. Conclusion

The Court concludes that the arbitration provision of the Customer Agreement is valid under Louisiana law.  The formation of the agreement was not marred by procedural or substantive unconscionability as to be unduly burdensome.  Accordingly, as a valid agreement, the contractual obligation of the parties to arbitrate their dispute is controlling.  Judicial review is precluded under 9 U.S.C. § 2.

IT IS ORDERED that the defendant's Motion to Dismiss pending arbitration is GRANTED. (Rec. Doc. 19).

New Orleans, Louisiana, this 21st day of November, 2008.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE